UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

MICHAEL JONES
o/b/o CLELANDA ADDISON,    1:20-cv-03063-NLH

              Plaintiff,   **OPINION**

v.

COMMISSIONER OF SOCIAL
SECURITY,
              Defendant.

---

**APPEARANCES:**

NIKHIL SHREERAM AGHARKAR
PIERRE LAW PC
211 E. 43RD STREET
SUITE 608
NEW YORK, NY 10017

    *On behalf of Plaintiff*

BRITTANY JOHANNA GIGLIOTTI
SOCIAL SECURITY ADMINISTRATION
OFFICE OF THE GENERAL COUNSEL
300 SPRING GARDEN STREET, 6TH FLOOR
PHILADELPHIA, PA 19123

    *On behalf of Defendant*

**HILLMAN**, District Judge

    This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding Clelanda Renee Addison's application for Disability Insurance Benefits ("DIB")[1] under Title II of the

---

[1] DIB is a program under the Social Security Act to provide

Social Security Act. 42 U.S.C. § 423, et seq. During the pendency of her DIB claim, Addison died on March 24, 2017 from a motor vehicle accident. Plaintiff Michael Jones was Addison's spouse and Jones qualified as a substitute party under 20 C.F.R. § 404.503(b) to pursue Addison's claim. The issue before the Court is whether the Administrative Law Judge ("ALJ") erred in finding that there was "substantial evidence" that Addison was not disabled at any time since her alleged onset date of disability, February 10, 2015. For the reasons stated below, this Court will affirm that decision.

I.   BACKGROUND AND PROCEDURAL HISTORY

On June 30, 2015, Addison protectively filed an application for DIB,[2] alleging that she became disabled on February 10, 2015.[3] Plaintiff claimed that she could no longer work as a medical assistant and administrative clerk due to pelvic mesh

---

disability benefits when a claimant with a sufficient number of quarters of insured employment has suffered such a mental or physical impairment that the claimant cannot perform substantial gainful employment for at least twelve months. 42 U.S.C. § 423 et seq.

[2] A protective filing date marks the time when a disability applicant made a written statement of his or her intent to file for benefits. That date may be earlier than the date of the formal application and may provide additional benefits to the claimant. See SSA Handbook 1507; SSR 72-8.

[3] Addison was 42 years old as of her alleged onset date. Under the regulations, Plaintiff was defined as a "younger individual" (age 18-49). 20 C.F.R. § 404.1563.

2

erosion, severe abdominal adhesions, low back pain, chronic pelvic pain, depression, and multiple abdominal surgeries, among other impairments.

Addison's claim was initially denied and then again upon reconsideration. After she passed away on March 24, 2017, and Jones was substituted as a party, Jones requested a hearing before an ALJ, which was held on August 6, 2018. On January 3, 2019, the ALJ issued an unfavorable decision. Jones's Request for Review of Hearing Decision was denied by the Appeals Council, making the ALJ's decision final. Jones brings this civil action for review of the Commissioner's decision.

**II.   DISCUSSION**

   **A.   Standard of Review**

Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny a complainant's application for social security benefits. Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995). A reviewing court must uphold the Commissioner's factual decisions where they are supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). Substantial evidence means more than "a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. V. NLRB, 305

3

U.S. 197, 229 (1938)).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id.  The inquiry is not whether the reviewing court would have made the same determination, but whether the Commissioner's conclusion was reasonable.  See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its totality.  See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984).  "[A] court must 'take into account whatever in the record fairly detracts from its weight.'" Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks v. Secretary of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988) (quoting Universal Camera Corp. V. NLRB, 340 U.S. 474, 488 (1951)).

The Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)).  The Third Circuit has held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000).  Similarly, an ALJ must also consider and weigh all of the non-medical evidence before him.  Id. (citing Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)); Cotter v. Harris, 642 F.2d

4

700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978). Although an ALJ, as the fact finder, must consider and evaluate the medical evidence presented, Fargnoli, 247 F.3d at 42, "[t]here is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record," Hur v. Barnhart, 94 F. App'x 130, 133 (3d Cir. 2004). In terms of judicial review, a district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams, 970 F.2d at 1182. However, apart from the substantial evidence inquiry, a reviewing court is entitled to satisfy itself that the Commissioner arrived at his decision by application of the proper legal standards. Sykes, 228 F.3d at 262; Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983); Curtin v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981).

**B.    Standard for DIB**

5

The Social Security Act defines "disability" for purposes of an entitlement to a period of disability and disability insurance benefits as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months.  See 42 U.S.C. § 1382c(a)(3)(A).  Under this definition, a Plaintiff qualifies as disabled only if her physical or mental impairments are of such severity that she is not only unable to perform her past relevant work, but cannot, given her age, education, and work experience, engage in any other type of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which she lives, or whether a specific job vacancy exists for her, or whether she would be hired if she applied for work.  42 U.S.C. § 1382c(a)(3)(B) (emphasis added).

The Commissioner has promulgated regulations[4] for determining disability that require application of a five-step sequential analysis.  See 20 C.F.R. § 404.1520.  This five-step process is summarized as follows:

1.   If the claimant currently is engaged in substantial

---

[4] The regulations were amended effective March 27, 2017.  See 82 F.R. 5844.  The parties do not specifically indicate that any of these amendments are applicable to Jones' appeal.

6

>    gainful employment, she will be found "not disabled."
>
> 2. If the claimant does not suffer from a "severe impairment," she will be found "not disabled."
>
> 3. If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 <u>and</u> has lasted or is expected to last for a continuous period of at least twelve months, the claimant will be found "disabled."
>
> 4. If the claimant can still perform work she has done in the past ("past relevant work") despite the severe impairment, she will be found "not disabled."
>
> 5. Finally, the Commissioner will consider the claimant's ability to perform work ("residual functional capacity"), age, education, and past work experience to determine whether or not she is capable of performing other work which exists in the national economy. If she is incapable, she will be found "disabled." If she is capable, she will be found "not disabled."

20 C.F.R. § 404.1520(b)-(f). Entitlement to benefits is therefore dependent upon a finding that the claimant is incapable of performing work in the national economy.

This five-step process involves a shifting burden of proof. <u>See</u> <u>Wallace v. Secretary of Health & Human Servs.</u>, 722 F.2d 1150, 1153 (3d Cir. 1983). In the first four steps of the analysis, the burden is on the claimant to prove every element of her claim by a preponderance of the evidence. <u>See</u> <u>id.</u> In the final step, the Commissioner bears the burden of proving that work is available for the Plaintiff: "Once a claimant has proved that he is unable to perform his former job, the burden shifts to the Commissioner to prove that there is some other

7

kind of substantial gainful employment he is able to perform." Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); see Olsen v. Schweiker, 703 F.2d 751, 753 (3d Cir. 1983).

### C. Analysis

At step one, the ALJ found that Addison had not engaged in substantial gainful activity since her alleged onset date. At step two, the ALJ found that Addison's degenerative disc disease of the lumbar spine, interstitial cystitis, chronic pelvic pain status post prolapsed uterus, obesity, depression, and anxiety were severe. At step three, the ALJ determined that Addison's severe impairments or her severe impairments in combination with her other impairments did not equal the severity of one of the listed impairments.

The ALJ then determined that Addison had the residual functional capacity ("RFC") to perform sedentary work[5] with certain restrictions, but this RFC did not permit Addison to perform her past relevant work as a medical assistant and administrative clerk (step four). The ALJ considered testimony from a vocational expert ("VE") at the hearing and determined that Addison was not disabled because, if she were alive, she would have been capable of performing other jobs in the national

---

[5] See 20 C.F.R. § 404.1567 ("Physical exertion requirements. To determine the physical exertion requirements of work in the national economy, we classify jobs as sedentary, light, medium, heavy, and very heavy.").

8

economy, such as an order clerk and call-out operator (step five).

Jones presents two main arguments on appeal. Jones argues that the ALJ erred in considering the opinion of Addison's treating physician, urogynecologist Heidi S. Harvie, M.D., in making the RFC assessment and reaching the ultimate conclusion that Addison was not disabled and was capable of performing sedentary work. Jones also argues that the ALJ erred when considering Addison's subjective complaints about her condition.

### 1. The ALJ's consideration of Addison's treating physician

Jones argues that the ALJ improperly discounted the opinion of Addison's treating urogynecologist, Dr. Harvie, who concluded that Addison was unable to work due to surgical complications resulting in chronic pain and urinary dysfunction such that Addison required ready access to a restroom for 6 to 8 restroom breaks per day. By failing to credit the opinion of Addison's treating physician, Jones argues that the ALJ violated the "cardinal principle" of social security law. Plaintiff contends that if the ALJ had properly considered Dr. Harvie's opinions, the ALJ could not have concluded that Addison retained the ability to perform sedentary work.

The opinion evidence of Dr. Harvie consists of two items. On February 10, 2015, Dr. Harvie authored the following note:

9

> To Whom it May Concern:
>
> Ms. Addison is a current urogynecology patient of Dr. Heidi Harvie. She currently presents with chronic pelvic pain, abdominal bloating, lower back pain, lower extremity pain and levator spasms. She has an extensive gynecology/urogynecology surgical history which includes an abdominal sacral uteropexy with a Polyform graft in 2006, a total abdominal hysterectomy, left salpingectomy, adhesiolysis, removal of mesh, bilateral uterosacral ligament suspension, Advantage Fit midurethral sling and a cystoscopy in 2012 and a revision and excision of eroded retropubic midurethral sling and cystoscopy in 2014.
>
> Ms. Addison is being referred to Pain Management to assist with getting her pain under control. She was prescribed a narcotic pain medicine to enable her to perform basic self-care tasks. She is also being referred to a surgeon to address her extensive adhesion history.
>
> Ms. Addison will be unable to work for a minimum of twelve continuous months to allow sufficient time for the aforementioned health conditions to be properly addressed.

(R. at 278.)[6]

On August 5, 2015, Dr. Harvie completed a Bladder Problem Impairment Questionnaire, in which Dr. Harvie described Addison's need for 6 to 8 restroom breaks during an 8-hour workday lasting for 15 to 20 minutes each due to urinary urgency and incontinence.  (R. at 454.)

The ALJ considered these opinions of Dr. Harvie and found:

> These opinions are given little weight because they are

---

[6] The record reflects another version of this note which is the same date and otherwise identical except it contains a limitation from working for six months.  (R. at 285.)

10

>     vague, conclusory, and lack the function-by-function
>     analysis required for a determination of Social Security
>     Disability.  Additionally, whether the claimant is
>     "disabled" is a determination reserved to the
>     Commissioner (20 CFR 404.1527(d and e)).  Further, the
>     opinion is not supported by the evidence of record that
>     supports simple work at a sedentary exertion level.
>     Treatment provided the claimant with some relief of her
>     symptoms (Ex. 4F at 1-2; Ex.13F).

(R. at 21.)

Jones argues that the ALJ's consideration of these two opinions of Dr. Harvie was in error because Addison's extensive surgical history, bladder urgency, and pain as documented by Dr. Harvie demonstrate that she was unable to work.  Jones further argues that the ALJ should have appreciated Dr. Harvie's expertise in those areas, and that the opinion of a treating source is not required to contain a function-by-function analysis to be credible evidence to support disability.  Jones also argues that the ALJ improperly substituted his lay opinion in determining in conclusory fashion that Addison could do sedentary work.

It is true that a "cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (citations and quotations omitted).  Here, however, although Dr. Harvie was

11

Addison's treating physician, and Addison had a history of surgeries, bladder urgency, and pain as noted by Dr. Harvie, the opinions of Dr. Harvie were provided in February 2015 and August 2015.  Addison's alleged disability onset date was February 10, 2015, and it was Addison's burden to demonstrate by the preponderance of the evidence[7] that as of that date she had a medically determinable impairment which "has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(A).  As found by the ALJ in considering the record evidence after August 2015, Addison failed to do so.

 The ALJ noted that as of December 2015 and through March 11, 2016, Addison had improvement in pain and urinary symptoms through physical therapy and medication.  (R. at 20.)  There is evidence that Addison reported that her symptoms worsened at some point, but after March 2016, Addison did not attend physical therapy and she did not seek treatment for, or make significant complaints of, urinary or pelvic symptoms.  In September 2016, Addison reported that she had lost weight from 212 pounds to 169 pounds and she was negative for polyuria (large amounts of urine).  (R. at 557, 559.)  In January 2017, gastroenterologist Monica B. Awsare, M.D., evaluated Addison and

---

[7] Wallace v. Secretary of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983).

12

noted that her abdomen was normal and non-distended with normal bowel sounds, and Addison denied dysuria (painful urination). Dr. Awsare also reported that even though Addison complained of epigastric pain related to her new diet and weight loss, Addison did not report urinary urgency, frequency, leakage, or pelvic pain.[8]  (R. at 568-570, 584, 587.)

As equally established as the "cardinal principle" invoked by Jones is the ALJ's ability to reduce his reliance upon a treating physician's opinions if those opinions are inconsistent with other medical evidence, and if he explains his reasoning. Plummer v. Apfel, 186 F.3d 422, 439 (3d Cir. 1999) ("[A]n ALJ is permitted to accept or reject all or part of any medical source's opinion, as long as the ALJ supports his assessment with substantial evidence."), cited by Brownawell v. Commissioner, 554 F.3d 352, 355 (3d Cir. 2008)); Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981) ("when the medical testimony or conclusions are conflicting, the ALJ is not only entitled but required to choose between them . . . [W]e need from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected.").  The ALJ explicitly complied with this requirement by articulating why he afforded

---

[8] There are no more medical records after this point due to Addison's death.

13

little weight to Dr. Harvie's opinions and by demonstrating that the other, more contemporaneous, evidence in the record did not support the severity and durational elements of Addison's disability claim.[9]  Thus, even if the ALJ afforded "great deference" to Dr. Harvie's opinions as Jones requests, those opinions only reflected Addison's condition at that time in 2015.  The ALJ did not err in his assessment of Addison's treating physician.

### 2. The ALJ's consideration of Addison's subjective complaints

The ALJ concluded that Addison's "medically determinable impairments could have reasonably been expected to cause the

---

[9] As quoted above, in assessing Dr. Harvie's two opinions, the ALJ stated, "These opinions are given little weight because they are vague, conclusory, and lack the function-by-function analysis required for a determination of Social Security Disability."  In this regard, the Court notes that Jones is correct that a medical opinion does not need to contain a function-by-function analysis to be considered credible evidence.  See 20 C.F.R. § 404.1527(c)(2) ("Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions.").  But the regulations instruct, "The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion.  The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion. . . . We will evaluate the degree to which these medical opinions consider all of the pertinent evidence in your claim, including medical opinions of treating and other examining sources."  Id. § 404.1527(c)(3). Here, the lack of many meaningful analysis of Addison's functions reduces the probity of Dr. Harvie's opinions.

14

alleged symptoms," and that "while the statements concerning the intensity, persistence, and limiting effects of [Addison's] symptoms are largely consistent with the medical evidence and other evidence in the record, they are inconsistent with a claim that they were disabling."  (R. at 21.)

Jones argues that Addison's complicated surgical history supports her allegations of disabling pelvic pain and urinary symptoms.  To support this contention, Jones points to the medical evidence from 2014-2015.  As discussed above, although it is undisputed that Addison suffered significant pelvic pain and urinary symptoms, the evidence post-2015 does not support the same "intensity, persistence, and limiting effects."

Jones also argues that the ALJ improperly conflated Addison's ability to perform basic self-care with her ability to perform "daily living activities."  Jones argues that medication Addison received in February 2015 permitted her to do basic self-care tasks such as routine grooming and bathing, but that did not mean Addison had the ability to engage in a full range of activities of daily living to include household chores, grocery shopping, and hobbies.

Again, even accepting that may have been true as of February 2015, the ALJ explained that Addison's complaints of pain improved with treatment, such as physical therapy, and she no longer sought treatment for pelvic pain or urinary symptoms

15

after March 2016.  The ALJ properly assessed Addison's subjective complaints.  See SSR 16-3p ("An individual's statements may address the frequency and duration of the symptoms, the location of the symptoms, and the impact of the symptoms on the ability to perform daily living activities.  An individual's statements may also include activities that precipitate or aggravate the symptoms, medications and treatments used, and other methods used to alleviate the symptoms.  We will consider an individual's statements about the intensity, persistence, and limiting effects of symptoms, and we will evaluate whether the statements are consistent with objective medical evidence and the other evidence.").

**III. Conclusion**

This Court may not second guess the ALJ's conclusions, but may only determine whether substantial evidence supports the ALJ's determinations.  Hartzell v. Astrue, 741 F. Supp. 2d 645, 647 (D.N.J. 2010) (citing Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992)) (explaining that the pinnacle legal principal that applies to the assessment of all of the other standards:  A district court is not empowered to weigh the evidence or substitute its conclusions for those of the ALJ). The Court finds in this case the ALJ's determination that Plaintiff was not totally disabled as of February 10, 2015 is supported by substantial evidence.  The decision of the ALJ is

16

therefore affirmed.

An accompanying Order will be issued.


Date: July 22, 2021                    s/ Noel L. Hillman
At Camden, New Jersey              NOEL L. HILLMAN, U.S.D.J.